UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JHS CAPITAL HOLDINGS, ET AL., | Case No. 10-11418 |
| Plaintiffs, | SENIOR UNITED STATES DISTRICT JUDGE |
| v. | ARTHUR J. TARNOW |
| PATRICK DEEL, ET AL., | UNITED STATES MAGISTRATE JUDGE |
| Defendants. | R. STEVEN WHALEN |

_____/

**ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE NOTICE OF SUPPLEMENTAL AUTHORITY [127] GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION ENJOINING DEFENDANTS FROM PURSUING ARBITRATION [102], DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT TO COMPEL ARBITRATION [108], AND DENYING DEFENDANTS' MOTION TO TAKE DISCOVERY PURSUANT TO FED. R. CIV. P. 56(f) [118]**

Before the Court are Plaintiffs' Motion for Preliminary Injunction Enjoining Defendants From Pursuing Arbitration [102], Defendants' Motion for Summary Judgment to Compel Arbitration [108], and Defendants' Motion to Take Discovery Pursuant to Fed. R. Civ. P. 56(f) [118]. A hearing was held on the Motions on November 9, 2010.[1]

---

[1] Also before the Court is Plaintiffs' Motion for Leave to File Notice of Supplemental Authority [127], which indicates that it is unopposed. Defendants filed a response [129] disagreeing with Plaintiffs' interpretation of its cited legal authority, but not disputing that the

For the reasons that follow, Plaintiffs' Motion for Preliminary Injunction Enjoining Defendants From Pursuing Arbitration [102] is **GRANTED IN PART** as to Plaintiffs Hyde Park and JHS Capital Holdings and **DENIED IN PART** as to the remaining Plaintiffs, Defendants' Motion for Summary Judgment to Compel Arbitration [108] is **DENIED**, and Defendants' Motion to Take Discovery Pursuant to Fed. R. Civ. P. 56(f) [118] is **DENIED**.

## I. Plaintiffs' Motion for Preliminary Injunction

### A. Standard of Review

The Sixth Circuit has observed, "A preliminary injunction is an extraordinary measure that has been characterized as one of the most drastic tools in the arsenal of judicial remedies." *See Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (citations and internal quotation marks omitted). In reviewing a motion for preliminary injunction, a district court considers: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Id*. at 809. Moreover, "the plaintiff bears the burden of persuading the court that the factors weigh in favor of granting a preliminary injunction." *See Williamson v. White*, 16 F.3d 1223, 1994 U.S. App. LEXIS 2944 at *4 (6th Cir. 1994) (unpublished). Finally, "It is well established

---

motion should be granted. Accordingly, the motion is granted.

2

that [t]he purpose of a preliminary injunction is simply to preserve the status quo; thus, findings of fact and conclusions of law made by a district court in granting a preliminary injunction are not binding at a trial on the merits." *See Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 874 n.13 (6th Cir. 2007) (citation and internal quotation marks omitted).

**B. Factor 1- Strong likelihood of success on the merits**

    **1. Plaintiffs Hyde Park Equity Investments, LLC and JHS Capital Holdings, Inc.**

The initial question the parties discuss is *who* should decide whether this dispute is subject to FINRA arbitration. Plaintiffs assert that this Court should decide whether Plaintiffs are required to arbitrate the dispute, while Defendants contend that the arbitrators must decide that question. Once the issue of *who* decides arbitrability is determined, then either this Court or the arbitrator would have to decide *"whether* [the] particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement..." *See First Options of Chicago v. Manuel Kaplan*, 514 U.S. 938, 944-945 (1995) (citation and internal quotation marks omitted). "[A] party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute..." *Id*. at 942.

The Supreme Court has concluded that courts should not presume "that the parties agreed to arbitrate arbitrability unless there is clea[r] and unmistakable

3

[e]vidence that they did so." *See First Options* at 944 (citation and internal quotation marks omitted). Thus, while there is normally a presumption in favor of arbitration when there is question for the court as to *whether* the particular merits dispute is within the scope of a valid arbitration agreement, that presumption is reversed in determining *who* should decide arbitrability, as there must be "clear and unmistakable evidence" for the Court to conclude that the arbitrator is the one to decide the issue. *Id*. at 944-945.

In *First Options*, supra, the Supreme Court concluded that the court, not the arbitrator, could determine the question of whether a non-signatory could be bound by an arbitration agreement to arbitrate. *See also Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002). In determining whether the parties agreed to arbitrate a particular dispute, "courts generally... should apply ordinary state-law principles that govern the formation of contracts," with the qualification noted above that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so." *See First Options* at 944 (citation and internal quotation marks omitted).

Under FINRA Rule 12200, parties must arbitrate a dispute if:

> A) Arbitration under the Code is either: (1) Required by a written agreement, or (2) Requested by the customer;
> B) The dispute is between a customer and a member or associated person of a member; and

> C) The dispute arises in connection with the business activities of the member or the associated person.

Thus, arbitration may be compelled by two different agreements. First, parties must arbitrate if required to do so by a written agreement. Second, FINRA "[m]ember securities dealers are subject to a compulsory arbitration agreement intended directly to benefit their customers." *See Oppenheimer v. Neidhardt*, 1994 U.S. Dist. LEXIS 5852 at *3 (S.D.N.Y. 1994); *see also Kidder v. Zinsmeyer Trusts Partnership*, 41 F.3d 861, 863 (2nd Cir. 1994). The parties do not dispute that arbitration may be compelled by either a separate written agreement or the FINRA Code. *See* Plaintiffs' Reply at 1; Defendants' Second Supplemental Brief at 2.

As to FINRA and the above Plaintiffs– This Court, not the arbitrator, must determine whether Plaintiffs Hyde Park and JHS Capital Holdings are bound under FINRA (as opposed to a separate agreement) to arbitrate the dispute at issue. Like *First Options*, the question before the Court is whether a party who did not sign an agreement could be bound to arbitrate. These Plaintiffs have not entered into an agreement to arbitrate under FINRA, as they are not FINRA members. Since they are not natural persons, they cannot be considered persons associated with a FINRA member. *See* FINRA Rule 12100(r). Thus, there does not appear a basis

upon which these Plaintiffs can be forced to arbitrate.[2]

Plaintiffs Hyde Park and JHS Capital Holdings thus show a strong likelihood of success on the merits of their claim they are not required to arbitrate.

**2. Plaintiff John Sykes**

Plaintiffs assert that Sykes is not a FINRA member, nor is he an associated person. Defendants argue that Sykes is a person associated with a member. *See* Defendants' Response at 8. The Court thus has authority under *First Options* and *Howsam* to determine this question since the parties dispute whether a non-signatory to an arbitration agreement can be bound to arbitrate. In determining whether Sykes may be required to arbitrate, the Court must decide whether the dispute at issue is between a customer and an associated person and whether it arises in connection with the business activities of the associated person.

Under FINRA Rule 12100(r), Sykes may qualify as a person associated with

---

[2] The Court further notes that neither side has submitted signed copies of all separate written agreements involving the parties (Exhibit 7 in Defendants' Combined Response/Motion for Summary Judgment is an unsigned new account form. Exhibit 8 is a new account form that has initials of a Plaintiff on it, but lacks a signature and a date. Exhibit 9 is not a new account form. Additionally, Defendants submitted a new account form as a supplemental filing [119] but that document is unsigned and undated, even though Defendants offer an affidavit from one Defendant stating he signed the form). At the hearing on November 9, 2010, counsel for Plaintiffs acknowledged the existence of such agreements, noting that such agreements were signed by GAF before his clients were involved in this matter and thus the language did not bind his clients. However, regardless of the language of any separate written agreement, this dispute would still not involve a member or associated person of a member, as required by FINRA Code 12200.

a member if it is shown that he is:

> (1) A natural person who is registered or has applied for registration under the Rules of FINRA; or (2) A sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member....

Although Plaintiffs assert that Sykes does not qualify as an associated person, they do not show a strong likelihood of success on the merits of this claim. Plaintiffs admit that Sykes is "an indirect owner of 70.5% of GunnAllen Holdings, Inc. ("GAH"), the non-broker-dealer holding company that owns GAF. *See* Plaintiffs' Motion at 5. Moreover, GAF's Broker Check Report from April 2010 indicates that Sykes "direct[s] the management or policies of the firm." *See* Defendants' Response, Exhibit 11 at 5. Significantly, this information was "reported by the firm." Although Plaintiffs dispute Sykes' role, any arguments they raise create at best a question of fact about Sykes' status as an associated person. They do not show a strong likelihood of success on the merits.

Furthermore, the dispute in question arises in connection with Sykes' business activities. *See Vestax Securities Corp. v. McWood*, 280 F.3d 1078, 1082 (6th Cir. 2002) (a failure to supervise claim satisfies this provision of Rule 12200). Additionally, although Sykes asserts that this dispute does not involve "customers"

since Defendants were not his direct customers, the Court disagrees with this reading of the FINRA Code rules. Under FINRA Rule 12100(i), the term "customer" is defined in the following manner: "A customer shall not include a broker or dealer." Thus, the language of the FINRA Code is not very limiting in its definition of who constitutes a customer and seems to suggest a broad reading.

Indeed, various courts have read the term broadly. For example, in *Vestax*, supra, the Court concluded that the dispute was between a customer and an associated person since the claimant defendant dealt with the registered agents of the plaintiff company; no direct involvement with the plaintiff company was necessary. *See also WMA Securities v. Ruppert*, 80 F.Supp.2d 786, 789 (S.D. Ohio 1999) (Court concludes that "Plaintiff's narrow definition of the term 'customer' in Rule 10301(a) [the precursor to FINRA Rule 12200] finds no support in the judicial decisions applying that rule."). Similarly, Defendants are not required to demonstrate a direct relationship with Sykes, a person associated with the member firm.

Thus, Plaintiffs have not shown a strong likelihood of success on the merits of in their argument that Sykes is not subject to arbitration.[3]

---

[3] As Plaintiffs have failed to show a strong likelihood of success on the merits of their claim that Sykes is not required to arbitrate under the FINRA Code, it is unnecessary to address the effect of any separate written agreement or Form U-4 on whether Sykes must arbitrate. Nonetheless, as noted above, copies of such written agreements have not been submitted to the

### 3. JHS Capital Advisors, Paul Richardson, Paul Chuzi, Mary Kennemur, and Kirk Kubach

Unlike JHS Capital Holdings, Hyde Park, and Sykes, who counsel for Plaintiffs dispute are FINRA member firms or persons associated with a member, counsel acknowledges in the Motion for Preliminary Injunction that JHS Capital Advisors is a FINRA member firm and that the individual Plaintiffs (Richardson, Chuzi, Kennemur, and Kubach) are persons associated with this FINRA member. *See* Plaintiffs' Motion at 6, 13. Counsel does not appear to contest that the FINRA Code applies to these parties; rather, Plaintiffs argue that Defendants are not their "customers" under FINRA Rule 12200. *Id*. at 6, 13-15; *see also* Plaintiffs' Reply at 12-13.

Although Plaintiffs Hyde Park and JHS Capital Holdings did not have agreements to arbitrate under FINRA because they are not members or persons associated with members, the above Plaintiffs, as an admitted FINRA member and persons associated with a member, "are subject to a compulsory arbitration agreement intended directly to benefit their customers." *See Oppenheimer* at *3;

---

Court. To the extent that Plaintiffs assert that the language of such agreements supports their motion, it is their burden to offer them. Counsel for Plaintiffs acknowledged the existence of such agreements, noting at the hearing that such agreements were signed by GAF before his clients were involved in this matter. Both sides offer conjecture about that the language of these agreements and whether such language would bind non-signatories.

9

*see also Kidder* at 863.[4]

Thus, the question before the Court is not whether the FINRA Code applies at all to these Plaintiffs; rather, what Plaintiffs ask this Court to decide is that Defendants are not "customers" of these Plaintiffs. A decision must be made under FINRA Rule 12200 as to whether "[t]he dispute is between a customer and a member or associated person of a member" and whether "[t]he dispute arises in connection with the business activities of the member or the associated person."

Such a determination is a question for the arbitrator, not this Court. *See Howsam* at 83-86 (Court concludes that although a "gateway dispute about whether the parties are bound by a given arbitration clause raises a question of arbitrability for a court to decide[,]" "procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide"; Court goes on to find that whether a claim against an NASD member was timely submitted under NASD Rule 10304 [now FINRA Rule 12206] is a procedural question for the arbitrator, noting that "the NASD arbitrators, comparatively more expert about the meaning of their own rule, are comparatively better able to interpret and apply it. In the absence of any statement

---

[4]Additionally, as Plaintiffs acknowledge that Richardson, Chuzi, Kennemur, and Kubach are associated persons, they may have signed a Form U-4 containing an arbitration clause requiring them to arbitrate, although Plaintiffs do not explicitly state in their motion that they did.

to the contrary in the arbitration agreement, it is reasonable to infer that the parties intended the agreement to reflect that understanding") (citations and internal quotation marks omitted) (emphasis in original); *see also O.N. Equity Sales Co. v. FINRA Dispute Resolution, Inc.*, 2008 U.S. Dist. LEXIS 11288 at *11-14 (S.D. Ohio 2008) (Court presented with question as to whether it or the arbitrator has jurisdiction to decide whether the claimants are "customers" of the FINRA member Plaintiff under FINRA Code 12200 concludes, relying on *Howsam*, "that the more compelling argument is that it is a procedural question for an arbitrator to decide").

Accordingly, this Court will not offer a merits determination for Plaintiffs JHS Capital Advisors, Richardson, Chuzi, Kennemur, and Kubach as to whether the dispute at issue is between a customer and member or associated person and arises in connection with the business activities of the member or associated person because these Plaintiffs are unable to even establish a strong likelihood of success that this Court has the authority to make that determination.

**C. Factor 2- Irreparable Harm**

Although Plaintiffs assert they will suffer irreparable harm if they are forced to arbitrate, "[t]here is nothing inherently unfair... about being required to

11

participate in arbitration, especially where one has contractually agreed to resolve disputes via arbitration." *See Pritchard v. Dent Wizard Int'l Corp.*, 275 F.Supp.2d 903, 919 (S.D. Ohio 2008). As discussed above– Based on their FINRA status, Plaintiffs JHS Capital Advisors, Richardson, Chuzi, Kennemur, and Kubach agreed to give the arbitrator the authority to address whether the underlying claims are arbitrable under the FINRA Code. Additionally, this Court, in exercising its authority to determine if the FINRA Code requires Plaintiff Sykes to arbitrate, has concluded that it likely does. Thus, allowing arbitration to proceed against these Plaintiffs would not constitute irreparable harm.

However, Plaintiffs Hyde Park and JHS Capital Holdings are not required to arbitrate under the FINRA Code, as they are not members or persons associated with a member (the definition of associated person is limited to natural persons). Since neither of these parties agreed to arbitrate, forcing them to do so could constitute irreparable harm. *See Vestax Secs. Corp. v. Desmond*, 919 F.Supp. 1061, 1074 (E.D. Mich. 1995).

**D. Factor 3- Substantial Harm to Others**

Defendants, if the injunction were issued as to Plaintiffs Sykes, JHS Capital Advisors, Richardson, Chuzi, Kennemur, and Kubach, would be harmed by not being permitted to pursue arbitration despite the above conclusions regarding the

arbitrator's authority over these Defendants.

**E. Factor 4- Public Interest**

The Supreme Court has "long recognized and enforced a liberal federal policy favoring arbitration agreements." *See Howsam* at 83 (citation and internal quotation marks omitted). Accordingly, the public interest favors allowing arbitration to continue against those Plaintiffs– Sykes, JHS Capital Advisors, Richardson, Chuzi, Kennemur, and Kubach– who are likely subject to arbitration.

**F. Conclusion**

Plaintiffs have shown a strong likelihood of success on the merits of their claim that Hyde Park and JHS Capital Holdings are not subject to arbitration. These Plaintiffs could suffer irreparable harm if forced to arbitrate, as they never agreed to the arbitration process.

However, Plaintiffs JHS Capital Advisors, Richardson, Chuzi, Kennemur, and Kubach have not shown a strong likelihood of success as to the argument that they are not required to arbitrate. Rather, this is an argument for the arbitrator to decide. Furthermore, Plaintiff Sykes has not shown a strong likelihood of success as to his argument that he is not required to arbitrate. Accordingly, these Plaintiffs will not suffer irreparable harm if the arbitration proceedings are not enjoined.

Taking into account the above considerations, Plaintiffs' Motion for

Preliminary Injunction is GRANTED IN PART as to Plaintiffs' Hyde Park and JHS Capital Holdings and DENIED IN PART as to Plaintiffs Sykes, JHS Capital Advisors, Richardson, Chuzi, Kennemur, and Kubach.

## II. Defendants' Motion for Summary Judgment to Compel Arbitration and Motion to Take Discovery Pursuant to Fed. R. Civ. P. 56(f)

Defendants' Response to the Preliminary Injunction Motion also serves as a combined Motion for Summary Judgment. Defendants argue that the arbitrator is the one who should decide the issue of arbitrability and that arbitration is required both under a separate agreement between the parties and the FINRA Code.

However, after Plaintiffs responded to Defendants' Motion, Defendants filed a Motion to Take Discovery indicating that "Plaintiffs' Reply Brief raises factual issues as to who signed arbitration agreements and whether Plaintiffs are subject to arbitration" and asking the Court to order discovery pursuant to Fed. R. Civ. P. 56(f).[5] *See* Defendants' Motion [118] at 2.

As Defendants state that factual issues remain, the Court will not grant their Motion for Summary Judgment at this time. Moreover, their Motion To Take Discovery Pursuant to Fed. R. Civ. P. 56(f) is denied, as the language of that rule

---

[5] It is Defendants' burden to offer evidence of such agreements in support of its summary judgment motion.

clearly only applies to parties who are opposing a summary judgment motion, allowing them in limited circumstances to defend themselves against the motion if they cannot initially produce evidence in opposition. Defendants cannot file a motion for summary judgment and then try to use the motion as a discovery mechanism.

**III. Conclusion**

Based on the above findings, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Preliminary Injunction Enjoining Defendants From Pursuing Arbitration [102] is **GRANTED IN PART** as to Plaintiffs Hyde Park and JHS Capital Holdings and **DENIED IN PART** as to the remaining Plaintiffs.

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment to Compel Arbitration [108] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Take Discovery Pursuant to Fed. R. Civ. P. 56(f) [118] is **DENIED**.

**SO ORDERED**.

S/ARTHUR J. TARNOW
Arthur J. Tarnow
Senior United States District Judge

Dated: December 20, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 20, 2010, by electronic and/or ordinary mail.

                              <u>S/LISA M. WARE</u>
                              Case Manager